# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

CORTEZ LEON SEAY,                    )
                                     )
            Plaintiff,               )
                                     )
v.                                   )     Case No.: 4:13-cv-00056-CLS-SGC
                                     )
SGT. BRUCE HODGE, et. al.,           )
                                     )
            Defendants.              )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Cortez Leon Seay ("Plaintiff"), filed a *pro se* complaint, thereafter amended, pursuant to 42 U.S.C. § 1983, alleging he was deprived of rights, privileges, or immunities afforded him under the Constitution or laws of the United States of America during his incarceration at the St. Clair Correctional Facility in Springville, Alabama.  Plaintiff names as defendants Sergeants Bruce Hodge and Reginald Cook and Correctional Officers Chad Cleveland, Kenneth Hawkins, and Andres Marcano.[1]  Plaintiff seeks compensatory and punitive damages.  In accordance with the usual practices of this Court and 28 U.S.C. § 636(b)(2), the complaint, as amended, was referred to the undersigned magistrate judge for a preliminary report and recommendation. *See McCarthy v. Bronson*, 500 U.S. 136, 111 S. Ct. 1737, 114 L. Ed. 2d 194 (1991).

## CASE HISTORY

Plaintiff originally named Sergeant Hodge and Correctional Officers Cleveland, Hawkins, Marcano, and Franklin as defendants.  (Doc. 1).  On May 22, 2013, the magistrate judge to whom this action was previously assigned entered an order for special report directing copies of the

---

[1] Defendant Kenneth O. Franklin was dismissed by an order dated January 3, 2014.  (Doc. 33).

complaint be forwarded to those defendants and requesting those defendants file a special report addressing Plaintiff's factual allegations. (Doc. 8). Plaintiff later amended his complaint to add Sergeant Cook as a defendant. (*See* Doc. 20). On August 28, 2013, Defendant Cook was ordered to file a special report responding to Plaintiff's allegations. (Doc. 21). The parties were advised the special report, if appropriate, might be considered a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docs. 8 and 21). On October 7, 2013, Defendants Hodge, Cook, Cleveland, Hawkins, and Marcano filed a special report accompanied by affidavits and exhibits. (Doc. 29).

On January 27, 2014, the parties were notified the special report would be construed as a motion for summary judgment, and Plaintiff was notified he would have twenty days to respond to such motion by filing affidavits or other material if he chose. (Doc. 34). Plaintiff was advised of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). *Id.* Plaintiff filed responsive pleadings. (Docs. 36-38). This matter is now before the undersigned on the special report filed by Defendants Hodge, Cook, Cleveland, Hawkins, and Marcano, which is construed as a motion for summary judgment, and Plaintiff's responses thereto.

## SUMMARY JUDGMENT STANDARD

Because the special report is being considered a motion for summary judgment, the undersigned must determine whether the moving party is entitled to judgment as a matter of law. Summary judgment may be granted only if there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. In making that assessment, a court must view the evidence in a light most favorable to the non-moving party and must draw all

reasonable inferences against the moving party. *See Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof is on the moving party to establish his *prima facie* entitlement to summary judgment by showing the absence of genuine issues and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990).

As the Eleventh Circuit Court of Appeals has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prime facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (quoting *Celotex*, 477 U.S. at 322). However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986).

## PLAINTIFF'S FACTUAL ALLEGATIONS

Plaintiff is an inmate in the custody of the Alabama Department of Corrections and is presently housed at the St. Clair Correctional Facility in Springville, Alabama.

On December 16, 2012 at approximately 7:00 P.M., a bed roster was conducted in M-2 dormitory on the bottom tier. (Doc. 1 at 5). Plaintiff was housed in cell M-43 on the top tier, so he

went down the staircase to get ice before the roster check made it to his area.  *Id.*  Defendant Hawkins, who was assigned to the M 1/2 cubicle, told Plaintiff to return to his cell.  *Id.*  Plaintiff asked if he could get some ice, and Hawkins allowed him to do so.  *Id.*  As Plaintiff was returning, Defendant Hawkins said, "Don't never let that happen again," and threatened Plaintiff by telling him what he would do to him if he did so.  *Id.*  Plaintiff told Defendant Hawkins "he wasn't talking about nothing."  *Id.*  Defendant Hawkins left the cubicle and asked Plaintiff for his ID card.  *Id.* Plaintiff did not have one, so Defendant Hawkins asked Officer Jaswani Rock,[2] who had been conducting the bed roster check, to take Plaintiff to the shift commander's office.  *Id.* at 6.

When Plaintiff arrived at the entrance to the hallway leading to the office, Defendant Hawkins grabbed Plaintiff's arm and ordered him to walk around the back near the restrooms to talk. *Id.*  Plaintiff told Defendant Hawkins to let go of him, and Defendant Hawkins became aggressive and pushed Plaintiff into the wall.  (Doc. 16-1 at 10-11).  Defendants Hodge, Cleveland, and Franklin ran out from the shift office and pushed Plaintiff to the floor.  *Id.*  Defendant Hodge sprayed Sabre Red on Plaintiff, and all four of the officers began to hit Plaintiff while he was on the floor. *Id.*  Defendant Cook observed the entire incident, but did nothing to protect Plaintiff.  *Id.*  When Plaintiff asked Defendant Cook if he was going to stand there and allow the officers to beat him up, Defendant Cook told Plaintiff to "shut the fuck up." *Id.* at 11-12.

Defendant Hodge then told the officers to take Plaintiff to the infirmary to receive a body chart. (Doc. 1 at 6).  Plaintiff was escorted to the infirmary by Defendants Cleveland and Franklin. *Id.* On the way to the infirmary, Defendant Cleveland punched Plaintiff in the head five times, and

---

[2]Plaintiff has not named Officer Rock as a defendant in this action.

Defendant Franklin rammed Plaintiff's face into the gate at the entrance to the breezeway. *Id.* Officer JaJuan Howard[3] and Defendant Marcano were standing at the breezeway gate and escorted Plaintiff to the infirmary. *Id.* at 6-7.

In the infirmary, Plaintiff was seated with his hands cuffed behind his back. *Id.* at 7. Defendant Hodge ordered Officer Howard and Defendants Cleveland, Franklin, and Marcano to lay Plaintiff face down on the floor. *Id.* The officers forced Plaintiff to the floor, and Defendant Marcano stated, "I didn't hit you the first time, but I'm hitting you now." *Id.* Defendant Hodge kicked Plaintiff five times in the face, bursting his lips, and three times in the left ribs. *Id.* Defendant Cleveland hit Plaintiff in the head five times. *Id.*

Plaintiff sustained the following injuries: bruised ribs, swelling of the face and mouth, loose teeth, and a sore thumb. (Doc. 16-1 at 13). A body chart was prepared, but the nurse did not put anything on the body chart about Plaintiff's ribs or thumb. (Doc. 1 at 7).

Plaintiff notes he is 5'3" tall and weighs approximately120 pounds, and states he is considerably smaller than Defendants.[4]

## DEFENDANTS' SPECIAL REPORT

Defendants deny using excessive force against Plaintiff and present a different version of events.

Defendant Hawkins disputes giving Plaintiff permission to get the ice and testifies when he told Plaintiff to go back to his cell, Plaintiff stated, "Fuck you, you ain't shit." (Doc. 29-1 at 1).

---

[3]Officer Howard is not named as a defendant in this action.

[4]The court takes judicial notice Plaintiff is serving a life sentence following a conviction of murder and attempted murder. (Doc. 29-19 at 2).

Defendant Hawkins further testifies when he asked Plaintiff for his ID, Plaintiff responded, "I ain't got no fuckin ID." (Doc. 29-2 at 1). Defendant Hawkins states Officers Guined and Milam[5] then escorted Plaintiff to the shift office and had him stand in the hallway until Defendant Cook was ready to talk to him. *Id.* When Defendant Hawkins arrived at the shift office, Plaintiff was still in the hallway, so he took Plaintiff by the arm to lead him into Defendant Cook's office. *Id.* In response, Plaintiff snatched his arm away, struck Defendant Hawkins in the right bicep area with his left fist, and stated, "Keep your mother fucking hands off me." *Id.* at 1-2. Defendant Hawkins states he immediately used a straight arm bar maneuver on Plaintiff and took him to the floor. *Id.* at 2. Plaintiff was resisting being handcuffed, so Officers Guined and Milam helped Defendant Hawkins get Plaintiff into the cuffs. *Id.* According to Defendant Hawkins, he used the least amount of force needed to take control of Plaintiff. *Id.* Although Defendant Hawkins does not specifically deny a chemical agent was sprayed in Plaintiff's face, he does testify once Plaintiff was handcuffed, no further force was used. *Id.*

Defendant Cook testifies he received a phone call from Defendant Hawkins stating Plaintiff was repeatedly leaving his assigned cell during bed count. (Doc. 29-5 at 1). Defendant Cook instructed Officers Guined and Milan to bring Plaintiff to the shift office for a counseling session. *Id.* While sitting in his office doing paperwork, Defendant Cook heard a commotion in the hallway. *Id.* Defendant Cook went into the front office and saw Plaintiff on the floor struggling with Officers Guined and Milam and Defendant Hawkins, while Defendant Hawkins was telling Plaintiff to put his hands behind his back. *Id.* Once restraints were on Plaintiff, Defendant Cook ordered Officers Guined and Milan to escort Plaintiff to the infirmary. *Id.* Defendant Cook denies having any

---

[5]Neither Officer Guined nor Officer Milam is named as a defendant in this action.

conversations with Plaintiff and testifies Plaintiff was not subjected to excessive force or the use of chemical agents. *Id.* at 1-2. Defendant Cook testifies if Plaintiff had been sprayed with a chemical agent, the body chart would have stated decontamination was necessary, and Plaintiff would have needed more medical attention than he received. *Id.*

Defendant Hodge testifies he was in the back office when an incident occurred between Plaintiff and Defendant Hawkins in the shift office hallway. (Doc. 29-1 at 1). When Defendant Hodge exited the office, he saw Officers Milam and Guined assisting Plaintiff to his feet and heard Defendant Cook direct Officers Milam and Guined to take Plaintiff to the infirmary for a medical evaluation. *Id.* Defendant Hodge does not specifically deny spraying Plaintiff directly in the face with a chemical agent. *Id.*

Officers Milam and Guined testify that on the date in question, Defendant Cook instructed them to escort Plaintiff from M block to the shift office. (Doc. 29-6, 29-7). The officers both testify when Defendant Hawkins arrived and tried to escort Plaintiff into the shift office, Plaintiff pulled away from Defendant Hawkins and said, "[K]eep your mother fucking hands off me." *Id.* Officer Guined describes Plaintiff as pulling away aggressively. (Doc. 29-7). Officer Guined testifies he, Officer Milam, and Defendant Hawkins took Plaintiff to the ground, then he handcuffed Plaintiff. *Id.* Officer Milam testifies Defendant Hawkins took Plaintiff to the ground, and Officer Guined then handcuffed Plaintiff. (Doc. 29-6). Officers Milam and Guined both testify they escorted Plaintiff to the infirmary. (Doc. 29-6, 29-7). Officer Guined testifies once in the infirmary, Plaintiff was agitated and cursing. (Doc. 29-7). According to Officer Guined, when Defendant Hodge and Officer Guthery[6]

---

[6]Plaintiff does not name Officer Guthery as a defendant in this action.

entered the infirmary, Defendant Hodge ordered Plaintiff to calm down and lay on the floor, and Plaintiff complied. *Id.*

Defendant Hodge testifies when he entered the infirmary to escort Plaintiff to segregation, Plaintiff was cursing and very agitated, so he ordered Plaintiff to calm down and lay on the floor. (Doc. 29-1 at 1). Plaintiff complied, was "helped to his feet," and Defendant Hodge then placed him in a chair for a medical evaluation. *Id.* Defendant Hodge does not specifically deny assaulting Plaintiff; there is no mention of any physical contact while in the infirmary. *Id.*

Defendant Cleveland testifies he was assigned as P-Q Rover on December 16, 2012 and has no knowledge of the incident between Plaintiff and Defendant Hawkins. (Doc. 29-3). Defendant Cleveland states he did not escort Plaintiff to the infirmary or enter the infirmary while Plaintiff was there. *Id.* Defendant Cleveland denies ever assaulting Plaintiff. *Id.* Defendant Marcano testifies he was finishing counting in N/O block in population when the incident in question occurred and has no knowledge of it. (Doc. 29-4). Defendant Marcano states he could not have seen anything happening in the breezeway from where he was and he did not assault or have any contact with Plaintiff that night. *Id.* Defendant Marcano denies assaulting Plaintiff and asserts Plaintiff is falsely accusing him of doing so. *Id.* Defendant Franklin has been dismissed as a defendant.

Defendants also included numerous exhibits, including incident and investigative reports, Plaintiff's medical records, and photographs. (Doc. 29). An investigation into the use of force in the hallway was conducted, and it was determined Officers Guined and Milam and Defendant Hawkins were justified in using a reasonable amount of force to secure and bring Plaintiff under control. (Doc. 29-16). The body chart noted a superficial abrasion to Plaintiff's left thumb, a slight bruise of about 4 cm on his ribs, and swelling of Plaintiff's upper and lower lips. *Id.* at 3. The color photos

taken of Plaintiff on the date in question show a slightly swollen and cut lip, but no other visible injuries. *Id.* at 9-14.

## **PLAINTIFF'S RESPONSE**

Plaintiff filed a response in opposition to Defendants' Special Report, accompanied by a sworn declaration, exhibits, and argument. (Docs. 36, 37, 38). He disputes much of Defendants' testimony and contradicts some of his own allegations.

Plaintiff does not deny aggressively pulling his arm away from Defendant Hawkins or striking him in the bicep, but states Defendant Hawkins was trying to force him into a hallway near the inmates' bathroom, where two officers were waiting as if they were about to ambush him. (Doc. 36 at 3-4). Plaintiff reiterates his testimony that after he told Defendant Hawkins to release his arm, Defendant Hawkins aggressively pushed him face first into a brick wall. *Id.* at 4. Plaintiff does not deny resisting thereafter but does testify Defendants Hawkins, Hodge, Franklin, and Cleveland picked him up in mid-air and "power slammed" him to the floor, causing his head to hit the pavement. *Id.* Plaintiff testifies the four officers then punched him several times in the mouth and repeatedly on the ribs but, again, does not deny resisting the officers' attempts to maintain control. *Id.*

Plaintiff reiterates his testimony Defendant Cook saw this occur and told Plaintiff to "shut the fuck up" while he allowed the officers to beat Plaintiff. *Id.* at 5. Plaintiff further testifies while he was being handcuffed, and was no threat to anyone, Defendant Hodge sprayed him directly in the face with the toxic chemical agent Sabre Red. *Id.* Plaintiff testifies his lip was bleeding badly, and as he was being escorted to the infirmary by Defendants Cleveland and Franklin, they pushed him

to the ground and struck him several times because he was not proceeding quickly enough, then both repeatedly rammed him into the breezeway gate until an officer came to open the gate. *Id.* at 5-6.

As to the events in the infirmary, Plaintiff does not deny he was cursing and agitated. However, he now testifies upon entering the infirmary, Defendant Hodge immediately grabbed Plaintiff, who was handcuffed, by the collar and slammed him to the floor, then struck Plaintiff five times on the back of the ribcage area. *Id.* at 6. This is contrary to Plaintiff's Complaint in which he claims Defendant Hodge directed Officer Howard and Defendants Cleveland, Franklin, and Marcano to place him on the floor and they did so. (Doc. 1 at 7). Thereafter, Plaintiff testifies Defendant Hodge kicked him in the mouth and then placed his knee in the center of Plaintiff's spinal column, causing Plaintiff great pain, while Defendant Marcano struck Plaintiff twice, stating he had not hit him before, but was hitting him now. *Id.* In this version of the events, Plaintiff does not allege he was struck by any other officers. Plaintiff testifies he was finally lifted off the floor and examined by the nurse, who removed Plaintiff's bloody shirt and handcuffs and took photos of Plaintiff's visible injuries to his mouth and his ribs. (Doc. 36 at 7). Plaintiff contends Defendant Cleveland lied in his affidavit when he denied having any knowledge of the incident. *Id.* at 8. While not specifically calling Defendant Marcano a liar, Plaintiff does claim Defendant Marcano struck him twice in the infirmary. *Id.* at 6. Plaintiff does not mention any involvement of Officers Guined or Milam.

## DISCUSSION

### Excessive force

The Eighth Amendment's prohibition against cruel and unusual punishment is triggered when a prisoner is subjected to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). When force is applied by prison officials, any Eighth Amendment inquiry must

concentrate on whether the force was applied in a good faith effort to maintain discipline, or was carried out maliciously or sadistically for the purpose of causing harm. *Id*. at 320.  In *Hudson v. McMillian*, the Supreme Court set out certain factors that should be considered in evaluating whether the use of force was wanton and unnecessary; they include: 1) the need for the application of force; 2) the relationship between the need and the amount of force used; 3) the threat reasonably perceived by the prison official; 4) any efforts made to temper the severity of a forceful response; and 5) the extent of the injury suffered by the inmate. 503 U.S. 1, 7 (1992).

It is well settled, however, that maintaining institutional security and preserving internal order and discipline are essential goals of a prison administration and may require limitation or retraction of the constitutional rights of prisoners. *Bell v. Wolfish*, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 47 (1979).  Prison officials must, therefore, be free to take appropriate action to insure the safety of inmates and staff, and the courts will not normally second guess prison officials on matters involving internal security. *Wilson v. Blankenship*, 163 F.3d 1284 (11th Cir. 1998).  Thus, in recognition of the hard choices faced by prison officials in the day-to-day operation of penal institutions, courts are obliged to apply an "appropriate hesitancy" in second guessing those officials who are quite often faced with decisions that are, of necessity, made "in haste, under pressure and frequently without the luxury of a second chance." *Whitley*, 475 U.S. at 321.

Accordingly, when considering the five *Hudson* factors, courts should "give a wide range of deference to prison officials acting to preserve discipline and security, including when considering decisions made at the scene of a disturbance," and examine the facts as reasonably perceived by defendants on the basis of the facts known to them at the time. *Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir.2007) (citations omitted).  Moreover, a distinction is made between "punishment after

the fact and immediate coercive measures necessary to restore order or security." *Ort v. White*, 813 F.2d 318, 324–325 (11th Cir.1987).

Turning to the facts of this case, Plaintiff does not dispute cursing and being disrespectful to Defendant Hawkins during the bed count; later pulling his arm away from Defendant Hawkins and hitting him in the bicep, when Defendant Hawkins attempted to escort him; or resisting the officers' attempts to get him subdued and under control in the hallway. Nor does Plaintiff dispute cursing and being agitated in the infirmary. Given Plaintiff was creating a disturbance and resisting the officers, Defendants were, therefore, justified in taking some action against Plaintiff to restrain him and to accomplish security interests.

Under Defendants' version of events, Defendant Hawkins and Officers Guined and Milam used only the force necessary to restrain and control Plaintiff in the shift office hallway, no chemical agent was used, and Defendants Hodge and Cleveland had no involvement whatsoever. Defendant Cook saw only a struggle between Plaintiff and Defendant Hawkins and Officers Guined and Milam, but had no conversations with Plaintiff, nor did he see Plaintiff subjected to excessive force or the use of chemical agents.  Thereafter, Defendant Cleveland denies walking Plaintiff to the infirmary or smashing his head into the wall.  According to Defendant Cleveland, Officers Guined and Milam escorted Plaintiff to the infirmary, and neither Officer Guined nor Officer Milam mentioned any use of force on the way. Finally, in the infirmary, according to Defendants, although Plaintiff was upset and cursing, he was not forcibly taken to the floor, but instead complied with Defendant Hodge's order to lay down and calm himself, and was then helped off the floor.

On the other hand, Plaintiff testifies Defendant Hawkins slammed him into the wall and was then thrown to the ground and beaten by Defendants Hawkins,  Hodge, Cleveland, and Franklin.

12

Then,  while Plaintiff was being handcuffed, Defendant Hodge sprayed Sabre Red directly into his face, and Defendants Cleveland and Franklin thereafter hit him and rammed him into the wall on numerous occasions on the way to the infirmary.  In the infirmary, Plaintiff contends he was thrown to the floor, kicked, and punched, while still handcuffed.

It is well established that assessing the credibility of the allegations made by a plaintiff or defendant is beyond the scope of a trial court's ruling on a motion for summary judgment.  *See, e.g., Anderson v. Liberty Lobby, Inc.*, 447 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1986).

The undersigned is cognizant Plaintiff's two accounts are, in some respects contradictory, and notes Plaintiff's allegation he was sprayed directly in the face at point blank range with a chemical agent does not appear to be supported by the medical evidence, which makes no reference to Plaintiff being decontaminated.  Moreover, the photographs are inconsistent with the extent of injuries that would be expected had Plaintiff suffered the assaults he describes.  However, the medical evidence does not conclusively refute Plaintiff's claims of excessive force, and the facts presented by both parties show a genuine dispute exists between their versions of the facts in connection with the December 16, 2012 incident such that granting of summary judgment would not be appropriate. *See Logan v. Smith*, 439 Fed.Appx. 798 (11th Cir.2011) (entry of summary judgment not appropriate in excessive force case where evidence suggested some level of injury to plaintiff and plaintiff presented his own affidavit testifying to use of force); *cf. Vicks v. Knight*, 380 Fed.Appx. 847, 852 (11th Cir.2010) (summary judgment granted where plaintiff presented no evidence of excessive force beyond his own affidavit, which was conclusively refuted by medical evidence).

As stated, the facts presented by both parties show a genuine dispute exists between their versions of the facts.  A reasonable jury could infer, accepting Plaintiff's allegations as true, the amount of force used on all three occasions was either unnecessary or exceeded the amount needed.  A reasonable jury could also find force was applied for reasons other than a good faith effort to maintain security or discipline.  Therefore, as to Plaintiff's Eighth Amendment excessive-force claims against Defendants Hodge, Cleveland, Hawkins, and Marcano, the motion for summary judgment is due to be denied.

To the extent Defendants Hodge, Cleveland, Hawkins, and Marcano argue they are entitled to qualified immunity with regard to Plaintiff's excessive force claim,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation.  The only question, then, is whether the plaintiff has alleged facts sufficient to survive a motion for summary judgment. If he has done so, that is the end of the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted) (quoting *Whitley*, 475 U.S. at 320-21).  Because Plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive-force claims, the motion for summary judgment on the basis of qualified immunity is also due to be denied.

**Failure to Intervene**

Plaintiff also asserts Defendant Cook violated his Eighth Amendment rights when he failed to intervene and protect him from Defendants Hodge, Cleveland, Hawkins, and Marcano.

Prison guards may become directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. *Ensley v. Soper,* 142 F.3d 1402, 1407 (11th

14

Cir. 1998).  However, for liability to attach, the officer must have actually been in a position to intervene. *Id*. at 1407 (*citing Thompson v. Boggs*, 33 F.3d 847 (7th Cir. 1994)).  Unless a guard has a "realistic opportunity" to prevent an attack, he cannot be held liable under § 1983.  *Thompson*, 33 F.3d at 857.

In this case, taking the facts in the light most favorable to Plaintiff, Defendant Cook observed Defendants Hodge, Hawkins, Cleveland, and Marcano beating Plaintiff, even after he had been restrained and handcuffed, but took no action to stop them, even though he had a reasonable opportunity to do so.  Accordingly, the motion for summary judgment as to Defendant Cook's failure to intervene is due to be denied.

## <u>RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT</u>

Accordingly, for the reasons stated above, the undersigned **RECOMMENDS** the motion for summary judgment filed by Defendants Hodge, Cook, Cleveland, Hawkins, and Marcano (Doc. 29) be **DENIED**.

Any party who objects to this report and recommendation must, within fourteen (14) days of the date on which it is entered, file specific written objections with the clerk of this court.  Any objections to the failure of the magistrate judge to address any facts or legal arguments also must be included.  Failure to do so will bar any later challenge or review of the magistrate judge's factual findings or legal conclusions.  *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140(1985), *reh'g denied*, 474 U.S. 1111 (1986); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (*en banc*).

To challenge the magistrate judge's factual findings or legal conclusions, a party must file with the clerk of the court written objections specifically identifying the factual findings or legal conclusions to which objection is made and the specific basis for objection.  The filing of objections

is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in the objections.  A copy of the objections must be served on all other parties to the action.

On receipt of objections meeting the foregoing specificity requirement, a district judge shall make a *de novo* determination of those portions of the report and recommendation to which objection is made and may accept, reject, or modify in whole or in part, the magistrate judge's factual findings or legal conclusions.  The district judge, however, need conduct a hearing only in his or her discretion or if required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The district judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions. Objections not meeting the foregoing specificity requirement will not be considered by a district judge.

A party may not appeal a magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final judgment entered by or at the direction of a district judge.

**DONE** this 11th day of July, 2014.


STACI  G. CORNELIUS
U.S. MAGISTRATE JUDGE

16